[Civ. No. 23752. Third Dist. Mar. 15, 1985.]

REBECCA NELSON, Plaintiff and Appellant, v.
RICHARD HALL et al., Defendants and Respondents.

COUNSEL

Jordan N. Peckham and Stephen C. Reed for Plaintiff and Appellant.

Matthews, Fuqua & Puritz and Morey W. Fuqua for Defendants and Respondents.

OPINION

ROBIE, J.*—Plaintiff Rebecca Nelson appeals from a judgment dismissing her complaint against defendants Susan and Richard Hall in an action for personal injuries, entered after the trial court granted defendants' motion for summary judgment. At issue in this appeal is (a) whether the defense of assumption of the risk is available under the "Dog Bite Statute" (Civ. Code, § 3342), and (b) whether a veterinarian or veterinary assistant assumes the

---

*Assigned by the Chairperson of the Judicial Council.

risk of dog bites as a matter of law while treating a dog. We hold in the affirmative.

FACTS

On January 21, 1983, plaintiff, a veterinary assistant, filed a complaint against defendants for injuries she sustained when she was bitten by defendants' dog while she assisted in its treatment at the animal hospital where she was employed. Plaintiff alleged that on or about July 30, 1982, while she was at the Skyway Pet Hospital (Skyway), defendants' dog, Amos, inflicted bites upon her head and face, causing permanent impairment, scarring, and disfigurement. Plaintiff further alleged that by reason of her injuries, she will be limited in her future employment, will require future plastic surgery, and has suffered severe emotional distress. Plaintiff brought the action under the so-called "Dog Bite Statute," Civil Code section 3342.[1] She did not allege defendants were negligent or had any knowledge of vicious propensities on Amos' part.

In answer, defendants alleged plaintiff contributed to her injuries by her own negligence and that she assumed the risk of injury. They further alleged strict liability for their dog's actions under section 3342 terminated when they delivered the dog to a qualified veterinarian and the veterinarian accepted employment.

After taking plaintiff's deposition, defendants moved for summary judgment, again contending they could not be held strictly liable under section 3342 when they delivered their dog to the veterinarian for medical treatment. Defendants submitted with the motion a portion of plaintiff's deposition and a declaration of plaintiff's employer, Mark Dunlap, D.V.M. In response to defendants' motion, plaintiff did not rebut defendants' factual evidence, but rather conceded its accuracy, arguing as a matter of law that delivery of defendants' dog to a veterinarian did not terminate their strict liability for dog-bite injuries.

Plaintiff had worked on and off as a veterinary assistant since 1966 or 1967. At that time she was studying animal husbandry and veterinary science in college. In 1980, she began working as a veterinary assistant at

---

[1]Civil Code section 3342 provides: "The owner of any dog is liable for the damages suffered by any person who is bitten by the dog while in a public place or lawfully in a private place, including the property of the owner of the dog, regardless of the former viciousness of the dog or the owner's knowledge of such viciousness. A person is lawfully upon the private property of such owner within the meaning of this section when he is on such property in the performance of any duty imposed upon him by the laws of this State or by the laws or postal regulations of the United States, or when he is on such property upon the invitation, express or implied, of the owner."

Skyway, which specializes in small animal treatment. There she assisted the veterinarians in all phases of veterinary medicine, including examinations, treatment, minor surgery, monitoring anesthesia, administering medication (including injections), and laboratory work.

Defendants' dog, Amos, is a black Labrador-German Shepard mix weighing approximately 100 pounds. He was first treated at the Skyway in 1974, and has been treated on a consistent basis since then. Amos was known to the hospital staff as a dog that might attempt to bite while receiving medical treatment. On at least one occasion prior to the incident in the present case, Amos attempted to bite his handlers, and a notation of "careful" was written on his treatment card.

On July 30, 1982, defendant Susan Hall brought Amos to the hospital with a complaint of a small swelling on his right side. Plaintiff directed Mrs. Hall to bring Amos into the examination room. At the time he appeared calm. Dr. James Wadsack, a licensed veterinarian, examined Amos and determined he required minor surgery to remove a foreign object from his right lateral abdomen. After injecting Amos with a sedative, Dr. Wadsack and plaintiff moved Amos to the treatment area of the hospital.

Once there, they lifted Amos onto the treatment table and placed him on his stomach. Plaintiff was standing alongside the treatment table waiting for the sedative to take effect, her left arm placed over Amos' neck and shoulders and her right arm on his loin or rump. She was not restraining him, and he appeared calm. Without warning, Amos quickly turned and bit plaintiff in the face, causing severe injuries. She received workers' compensation benefits.

Plaintiff was not aware of any vicious propensities on the part of Amos and he did not display any such propensities while she handled him, until the time of the attack. Skyway uses muzzles on dogs who are known to be vicious, but no muzzle was used on Amos. No allegation was made that defendants were aware of any vicious propensities on Amos' part. There was no evidence that they were aware Amos had previously attempted to bite his handlers.

In his declaration, Dr. Dunlap stated it is generally accepted in the veterinary profession that any animal may react strangely or dangerously while receiving treatment, regardless of its behavior in the home environment. A veterinarian cannot assume a normally gentle dog will act gently while receiving treatment. Dog bites are an occupational hazard in the veterinary profession and Dr. Dunlap has been bitten several times. The seriousness of the hazard can be minimized through proper safety precautions. Plaintiff

has received more than five minor dog bites, one of which required medical treatment. Some were received while the animals were sedated.

## DISCUSSION

Although Civil Code section 3342 by its terms imposes strict liability on dog owners,[2] it has been long established that the defense of assumption of the risk applies to actions brought under the "Dog Bite Statute."[3] The first case to so hold was *Smythe* v. *Schacht* in 1949, at which time the statute was uncodified. (93 Cal.App.2d 315, 321-322 [209 P.2d 114].) In 1953, the Legislature reenacted and codified the statute without substantive modification (Stats. 1953, ch. 37) and subsequent courts, including our Supreme Court, have reiterated the *Smythe* rule. (*Gomes* v. *Byrne* (1959) 51 Cal.2d 418, 420 [333 P.2d 754]; *Burden* v. *Globerson* (1967) 252 Cal.App.2d 468, 470-471 [60 Cal.Rptr. 632]; *Greene* v. *Watts* (1962) 210 Cal.App.2d 103, 105 [26 Cal.Rptr. 334].)

Even before the enactment of the "Dog Bite Statute" in 1931 (Stats. 1931, ch. 503), assumption of the risk was held to be a defense to strict liability for injuries caused by a dangerous animal. (*Opelt* v. *Al. G. Barnes Co.* (1919) 41 Cal.App. 776, 779-780 [183 P. 241]; see Rest.2d Torts, § 515, subd. (3), com. e, and cases cited in appendix, § 515, p. 30; Prosser & Keeton, Torts (5th ed. 1984) § 79, p. 566, and cases cited therein.) This rule still exists for animal cases as well as other instances of strict liability. (Rest.2d Torts, *supra;* Prosser & Keeton, *supra; Lipson* v. *Superior Court, supra,* 31 Cal.3d at p. 375; *Luque* v. *McLean* (1972) 8 Cal.3d 136, 145 [104 Cal.Rptr. 443, 501 P.2d 1163].)

In certain circumstances the defense of assumption of the risk has survived the establishment of comparative fault. Where assumption of the risk is only a form of contributory negligence—i.e., where a plaintiff *unreasonably* encounters a known risk—the doctrine has been subsumed by comparative fault (*Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 824-825, 829 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]), which is applicable to cases of strict liability (*Daly* v. *General Motors Corp.* (1978) 20

---

[2]We have found but one case in other states which appears to have decided the issue in this appeal. In *Wendland* v. *Akers* (Fla.App. 1978) 356 So.2d 368 [4 A.L.R.4th 343], a Florida appellate court, construing a statute similar to section 3342, concluded a dog owner is not strictly liable for injuries sustained by a veterinary assistant after delivery of the dog to a qualified veterinarian for medical treatment. The court relied primarily on a theory of the intervening negligence of the veterinarian as an independent contractor. We reach our conclusion on different grounds.

[3]"In this state, the defense of assumption of risk arises when the plaintiff voluntarily undertakes to encounter a specific known risk imposed by defendant's conduct." (*Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 375, fn. 8 [182 Cal.Rptr. 629, 644 P.2d 822].)

Cal.3d 725 [144 Cal.Rptr. 380, 575 P.2d 1162]). Where assumption of the risk is not merely a form of contributory negligence, it has not been subsumed and is a complete defense. (*Baker* v. *Superior Court* (1982) 129 Cal.App.3d 710, 719 [181 Cal.Rptr. 311].)

Plaintiff does not dispute defendants' factual showing. Plaintiff's employer stated that dog bites are an occupational hazard in the veterinary profession and it cannot be assumed a normally gentle dog will act gently while receiving treatment. This risk logically extends to those who assist veterinarians in the treatment of dogs. Plaintiff was aware from her personal experience of the hazard involved in treating dogs, for she had been bitten several times, albeit not as seriously as in this instance. She voluntarily undertook to encounter a specific known risk. It is irrelevant that she was not aware of any particular vicious propensities on the part of Amos, for what is relevant in assumption of the risk is a person's "'. . . knowledge and appreciation of the *danger* involved and his voluntary acceptance of the risk.'" (*Gomes* v. *Byrne, supra,* 51 Cal.2d at p. 420; original italics.) The risk of dog bites during treatment is a specific known hazard endemic to the very occupation in which plaintiff voluntarily engaged. Therefore, in voluntarily engaging in the occupation of assisting veterinarians in the medical treatment of dogs, plaintiff assumed the risk of being bitten during the course of treatment.

This is a case of "true" or "primary" assumption of the risk whereby the defendant is impliedly relieved of any duty of care by the plaintiff's acceptance of employment involving a known risk or danger. (See *Baker* v. *Superior Court, supra,* 129 Cal.App.3d at pp. 719-720; Prosser & Keeton, Torts, *supra,* § 68, p. 481.) A veterinary assistant cannot be deemed to have unreasonably encountered a risk that is inherent in his or her job. Therefore, this type of assumption of the risk is not subsumed by comparative fault and, hence, is a complete defense. (*Baker* v. *Superior Court, supra,* 129 Cal.App.3d at p. 719; Prosser & Keeton, *supra,* at pp. 496-497.)

Charging a plaintiff with having assumed the risks inherent in his or her occupation is not without precedent in this state. For example, it is well-established that firefighters injured while fighting a fire have no cause of action against the person whose negligence caused the fire in question. (*Lipson* v. *Superior Court, supra,* 31 Cal.3d 362; *Giorgi* v. *Pacific Gas & Elec. Co.* (1968) 266 Cal.App.2d 355 [72 Cal.Rptr. 119].) This rule applies as well to police officers injured in the course of their duties. (*Walters* v. *Sloan* (1977) 20 Cal.3d 199 [142 Cal.Rptr. 152, 571 P.2d 609].) The "fireman's rule" is based primarily upon the principle of assumption of the risk. (*Lipson* v. *Superior Court, supra,* 31 Cal.3d at p. 370.) Since firefighting is an occupation which *by its very nature* exposes them to particular hazards,

firefighters cannot complain of conduct which forms the basis for their being summoned to a fire. (*Id.*, at p. 368.) The "fireman's rule" applies not only to negate an action based upon a defendant's negligence, but as well, an action based upon strict liability. (*Id.*, at pp. 374-376.) Moreover, it is a complete defense. (*Baker* v. *Superior Court, supra,* 129 Cal.App.3d at pp. 719-720.)

The same principles apply here. A veterinarian or a veterinary assistant who accepts employment for the medical treatment of a dog, aware of the risk that *any* dog, regardless of its previous nature, might bite while being treated, has assumed this risk as part of his or her occupation. The veterinarian determines the method of treatment and handling of the dog. He or she is the person in possession and control of the dog and is in the best position to take necessary precautions and protective measures. The dog owner who has no knowledge of its particular vicious propensities has no control over what happens to the dog while being treated in a strange environment and cannot know how the dog will react to treatment. A dog owner who does no more than turn his or her dog over to a qualified veterinarian for medical treatment should not be held strictly liable when the dog bites a veterinarian or a veterinary assistant while being treated.[4]

Accordingly, we hold that assumption of the risk is a complete defense to an action by a veterinary assistant against a dog owner for damages for injuries suffered from being bitten by the owner's dog during the course of medical treatment.

### DISPOSITION

The judgment is affirmed.

Blease, Acting, P. J., and Sims, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 22, 1985.

---

[4]This does not mean dog owners could *never* be held liable for injuries to veterinarians or their assistants. We emphasize that the defense of assumption of the risk extends only to the danger which the injured person has *knowingly* assumed; i.e., the danger the dog will bite *while being treated.*

Moreover, if a dog owner purposefully or negligently conceals a particular known hazard from a veterinarian, he or she would not be relieved of liability, for this would expose the injured person to an unknown risk. (See *Lipson* v. *Superior Court, supra,* 31 Cal.3d at p. 371.) This question is not before us, since defendants are not accused of negligence or of knowledge of any particular vicious propensities on Amos' part.